## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

ANTONIO DEION BREWER,              )
                                   )
                  Petitioner,      )
                                   )
v.                                 )          **Case No. 09-CV-0301-CVE- PJC**
                                   )
RANDALL WORKMAN, Warden,           )
                                   )
                                   )
                  Respondent.      )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner Antonio Deion Brewer, a state prisoner appearing pro se. Respondent filed a response to the petition (Dkt. # 12), and provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 12, 13 and 14). Petitioner did not file a reply. For the reasons discussed below, the Court finds the petition for writ of habeas corpus shall be denied.

### *BACKGROUND*

In the early morning hours of January 1, 2006, gunshots were fired from a vehicle in the parking lot of the Executive Inn in Tulsa, Oklahoma, killing a young man walking on the outside stairs of the hotel. The victim, Robert Crisp, a/k/a "Pug" or "Puggy," was known to the occupants of the vehicle. Following an investigation of the murder and New Year's Eve events leading up to the murder, Petitioner was arrested by the Tulsa Police Department and charged with first degree murder on January 23, 2006.

A jury trial was held October 9-17, 2006, in Tulsa County District Court Case No. CF-2006-227. Petitioner was found guilty, and sentenced to life in prison without the possibility of parole. He was represented at trial by attorneys John Byrd and Sharon Holmes.

Petitioner perfected a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA).

Represented by attorney William H. Luker, Petitioner raised the following propositions of error:

Proposition I:     The evidence produced at trial was insufficient to prove beyond a reasonable doubt that Appellant murdered Robert Crisp.

Proposition II:    The trial court committed reversible error by failing to provide the jury with instructions informing them that Edwin Daniels was an accomplice, and further informing them that a conviction cannot be had upon the testimony of an accomplice unless his testimony is corroborated. Failure to instruct the jury on such crucial rules of law deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and Article II, § 7 of the Oklahoma constitution.

Proposition III:   The trial court committed reversible error by permitting the State to pervade the proceedings with evidence concerning the customs and culture of street gangs and Appellant's supposed association with them over defense objections. This evidence was irrelevant and more prejudicial than probative and its introduction violated Appellant's rights under the First and Fourteenth Amendments of the United States Constitution and Article II, §§ 3, 7 and 22 of the Oklahoma Constitution.

Proposition IV:    The trial court committed reversible error by permitting the State to impeach the testimony of State's witnesses Demario Adams and Marco Barnett with portions of their statements to Detective Nance that appeared to be inconsistent with their trial testimony, despite the fact that the State had previously failed to give these witnesses an opportunity to admit, deny, or explain these statements when they testified. This error violated Appellant's rights under the Sixth and Fourteenth Amendments of the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

Proposition V:     The introduction of the irrelevant opinion testimony of Officers Michael Nance and Jeff Henderson violated the Appellant's rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article II, § 7 of the Oklahoma Constitution.

Proposition VI:    The trial court abused its discretion by denying Appellant's motion for a continuance notwithstanding the fact he had been in trial on another charge until only a few days before his trial in this case. By denying Appellant's motion the trial court violated Appellant's rights

2

under the Fourteenth Amendment of the United States Constitution
and Article II, § 7 of the Oklahoma Constitution.

Proposition VII:      The accumulation of error in this case deprived Appellant of due
process of law and necessitates reversal pursuant to the Fourteenth
Amendment to the United States Constitution and Article II, § 7 of
the Oklahoma Constitution.

See Dkt. # 12, Ex. 1.  In an unpublished summary opinion, filed May 22, 2008, in Case No. F-2006-

1221 (Dkt. # 12, Ex. 3), the OCCA rejected each claim and affirmed the Judgment and Sentence of

the district court.  Petitioner did not file a request for post-conviction relief in the state courts. There

is no evidence that Petitioner filed a petition for writ of certiorari at the United States Supreme

Court.

On May 19, 2009, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1).

He identifies his claims as the same ones raised on direct appeal, and attaches a copy of his direct

appeal brief for the Court's use in addressing the issues. In response to the petition, Respondent

argues Petitioner is not entitled to habeas corpus relief.  See Dkt. # 12.

## *ANALYSIS*

### A.      **Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion

requirements of 28 U.S.C. § 2254(b), (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner

fairly presented the substance of his claims to the OCCA on direct appeal.  Therefore, the exhaustion

requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See

Williams v. Taylor, 529 U.S. 420 (2000).

**B.     Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The OCCA denied relief on all of Petitioner's claims on direct appeal. Thus, to the extent the claims are cognizable in a federal habeas corpus proceeding, this Court shall review those grounds under § 2254(d).

As a preliminary matter, the Court finds Petitioner's claims that he was convicted in violation of the Oklahoma Constitution shall be denied because they are not cognizable on federal habeas corpus review.  A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law

4

questions).  Instead, when conducting habeas review, a federal court is limited to deciding whether

a conviction violated the Constitution, laws, or treaties of the United States. Id. at 68 (citing 28

U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975)). Petitioner's allegations of a violation of

the Oklahoma constitution will not be addressed further in this opinion.

### 1.        Insufficient evidence (ground 1)

In his first ground for relief, Petitioner argues that the State presented insufficient evidence

at trial to support his conviction for first degree murder. He claims that not a single witness who

testified at his trial could identify him as the person in the car who fired the gunshots that killed

Robert Crisp. At Petitioner's preliminary hearing, Edwin Daniels, the driver of the vehicle, testified

that Petitioner fired the gunshots that killed Crisp.  At trial, however, Daniels was found to be

unavailable to testify and, for that reason, his preliminary hearing testimony was read into the trial

record. Petitioner contends, as he did on direct appeal, that Daniels' preliminary hearing version of

events was not supported at trial by any of the other witnesses who were in the car at the Executive

Inn. On direct appeal, the OCCA addressed the issue of witness credibility, reasoning as follows:

> In this case, the jury was unable to observe the demeanor of Edwin Daniels. Yet the
> jury *was* able to test Daniels's claims against those made by the other eyewitnesses,
> who *did* testify at trial. Insofar as these witnesses varied from their preliminary
> hearing testimony, or were impeached with their prior inconsistent statements to
> police, the jurors were able to personally observe each witness's demeanor to help
> them assess the credibility of those revisions. In other words, the jury was able to
> indirectly assess the credibility of Daniels's claims, by directly assessing the
> credibility of those who had made corroborating claims - some under oath, some not
> - as each testified at Appellant's trial.

Dkt. # 12, Ex. 3 at 5-6 (emphasis in original; footnote omitted). The OCCA concluded that the

evidence was sufficient to support Petitioner's conviction because, "[a] rational trier of fact could

conclude that all of [the]evidence, taken together, left no reasonable doubt that Appellant murdered Robert Crisp." Id. at 8-9.

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004) (citing Jackson, 443 U.S. at 319). In other words, it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." Jackson, 443 U.S. at 319.

To convict Petitioner of this crime, the State had to prove beyond a reasonable doubt that Petitioner "unlawfully and with malice aforethought cause[d] the death of another human being." Okla. Stat. tit. 21, §701.7 (A). See also Dkt. # 14-15, Instruction No. 24, O.R. at 162. The jury was instructed that "malice aforethought" means a deliberate intention to take away the life of a human being. See id., Instruction No. 25, O.R. at 163.

Upon review of the evidence in the light most favorable to the prosecution, the Court finds that the evidence was sufficient for a rational fact-finder to have found beyond a reasonable doubt that Petitioner was guilty of the first degree murder of Robert Crisp. As stated above, Daniels' preliminary hearing testimony was read to the jury. At the preliminary hearing, Daniels testified that he, Brittany Carter, Terrell LaGrone and DeMario Adams went to the Image Club the night of December 31, 2005. Dkt. # 12, Ex. 4 at 9. He identified Petitioner as a person known as "5-7." Id. at 10. Further, when he left the club, he left with "Brittany, Terrell, 5-7, Mario and myself." Id. at

6

12. He testified that Terrell was in the front passenger seat, DeMario was behind Edwin Daniels in the back seat, Brittany was in the middle in the back seat, and 5-7 was on the other side of Brittany, behind Terrell. Id. at 13-14. After going to the Chicken Shack, and then to the parking lot of the Executive Inn, Daniels testified that shots started "going off" out through the window of the back seat, passenger's side of his car. Id. at 17. He also testified that 5-7 was doing the shooting with a gun that was "originally" Daniels' gun. Id. at 18.

Evidence presented at trial supported Edwin Daniels' preliminary hearing version of events. Brittany Carter did not testify at the preliminary hearing. However, at trial she testified that the man sitting to her right in the back seat of the car started shooting out of the open window when they were parked at the Executive Inn. Dkt. # 14-6, Tr. Trans. Vol. V at 905. She claimed that she did not get a good look at that person sitting next to her, and could not identify Petitioner as the shooter. Id. at 926. She admitted on redirect examination that she was arrested as a material witness, was testifying pursuant to a warrant, and did not come to court willingly. Id. at 936. Witness DeMario Adams testified at trial that he could not be sure if Petitioner was the shooter because his hair was not in braids. Dkt. # 14-5, Tr. Trans. Vol. IV at 717. However, Tulsa Police Detective Michael Nance testified that, during his investigation, DeMario Adams told him that he, Brittany Carter and Petitioner were in the back seat of the car driven by Edwin Daniels the night of the murder. Dkt. # 14-8, Tr. Trans. Vol. VII at 1260-61.  Adams also told Detective Nance that Petitioner, also known to Adams as "5-7," was the shooter. Although he changed his testimony on cross examination, Terrell Lagrone testified on direct examination that Petitioner was the person sitting behind him in the car driven by Edwin Daniels the night of the murder. See Dkt. # 14-5, Tr. Trans. Vol. IV at 779, 782. Finally, the medical examiner testified that the angle of the bullet wounds in the victim

supported the testimony that Mr. Crisp was shot from the parking lot of the Executive Inn. Dkt. # 14-8, Tr. Trans. Vol. VII at 1233-34.

The Court concludes that the evidence was sufficient to support Petitioner's conviction. The OCCA's resolution of Petitioner's challenge to the sufficiency of the evidence was not contrary to, or an unreasonable application of, Supreme Court law, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2). See Dockins, 374 F.3d at 939 (recognizing that the Tenth Circuit has yet to decide whether sufficiency of the evidence on habeas review presents a question of law or fact). Petitioner is not entitled to habeas corpus relief on this claim.

**2.      Failure to instruct the jury regarding an accomplice (ground 2)**

Petitioner's second allegation, that the trial court erred in failing to instruct the jury that Edwin Daniels was an accomplice, was also raised on direct appeal. He claims that the omission of instructions explaining the need for corroboration of Edwin Daniels' testimony violated his due process rights guaranteed by the Fourteenth Amendment. He acknowledges that his trial counsel did not request instructions on the need for corroboration. The OCCA determined that accomplice instructions were not warranted and the "trial court did not err in failing to instruct the jury, sua sponte, that Daniels must be, or could be, considered an accomplice whose testimony must be corroborated." Dkt. # 12, Ex. 3 at 8.The OCCA explained its reasoning, as follows:

> In arguing that Daniels rose to the level of an accomplice, and that his testimony was insufficient to convict, Appellant points out that by his own admission, Daniels's purpose in driving to the motel was to track down some young men previously encountered at the night club, so that "they" (presumably, all the young men in Daniels's car) could fight them. Appellant also points out that the firearm allegedly used to shoot Crisp had previously been in Daniels's possession. Yet, despite the inability (or unwillingness), at trial, of the other passengers in Daniels's vehicle to name Appellant as the gunman, their testimony, taken as a whole, interlocks with and corroborates Daniels's preliminary hearing in a number

8

of respects. And none of them gave any hint of a prearranged plan, or concerted action, to use a firearm or other deadly weapon.

Demario Adams had previously sworn (at preliminary hearing) that Appellant was the gunman. At both preliminary hearing and trial, Marco Barnett testified that shortly after the shooting, Brittany Carter exclaimed, "Five-seven shot Pug. Oh, my God. Oh, my god. I can't believe this happened." At trial, neither LaGrone, Adams nor Carter would identify the gunman, but Adams and Carter agreed that the shots were fired by the fifth passenger, a young male, sitting on the right side of the back seat. (LaGrone claimed he did not know where the shots came from.) None of these witnesses implicated Daniels as doing the shooting or encouraging the shooter in any way. Carter testified that after the shooting, the gunman said something to the effect of, "I love doing stuff like that."

. . .

Daniels's preliminary hearing testimony was, in fact, sufficiently corroborated by the interlocking statements of the other occupants of the vehicle, which consisted of trial testimony, preliminary hearing testimony, and unsworn excited utterances.

Id. at 6-8 (footnotes omitted).

It is well established that "[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Petitioner has failed to demonstrate that the OCCA's adjudication of his ground two claim was contrary to, or an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(1),(2). There was no evidence of a prearranged plan among the occupants of the car to shoot or kill anyone. In fact, all the evidence showed that Petitioner acted alone. Accordingly, it was unnecessary for the trial court to instruct the jury regarding corroboration of accomplice testimony. Furthermore, the Court agrees with the OCCA's assessment that evidence presented at trial corroborated Edwin Daniels' testimony. Petitioner's trial was not rendered fundamentally unfair as a result of the trial judge's failure to issue instructions advising the jury that Edwin Daniels was an accomplice whose testimony must be corroborated by other evidence. Petitioner is not entitled to habeas corpus relief under § 2254(d) on this portion of his ground two claim.

In the second part of his ground two claim, Petitioner contends that his counsel's failure to request instructions on the need for corroboration of Edwin Daniels' testimony constituted ineffective assistance of counsel. Relying on Strickland v. Washington, 466 U.S. 668 (1984), the OCCA rejected the claim that trial counsel's failure to request the instructions amounted to ineffective assistance of counsel because the instructions were not warranted. Dkt. # 12, Ex. 3 at 8.

To be entitled to habeas corpus relief on this claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland. Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by

10

showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). A federal habeas court may intercede only if the petitioner can overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011). If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails. Strickland, 466 U.S. at 700. Thus, it is not always necessary to address both Strickland prongs.

In his habeas petition, Petitioner fails to present any argument or authority to convince the Court that the OCCA's decision was an unreasonable application of Strickland. Having failed to satisfy his burden under AEDPA, the Court finds that Petitioner is not entitled to relief on the ineffective assistance of counsel argument in his ground two claim.

**3.      Errors in evidentiary rulings not cognizable (grounds 3, 4, and 5)**

In ground three, Petitioner complains that the trial court erred in allowing the jury to hear

testimonial evidence regarding the customs and culture of Tulsa street gangs. He claims that this

evidence was irrelevant, and more prejudicial than probative. In ground four, he argues that his

constitutional rights were violated when the trial court erroneously permitted the prosecutor to

impeach the testimony of Demario Adams and Marco Barnett with prior inconsistent statements

made to the police. In ground five, Petitioner contends that the irrelevant opinion testimony of Tulsa

Police officers Michael Nance and Jeff Henderson violated his right to a fair trial. Relying on the

Oklahoma Evidence Code, other Oklahoma statutes, and case law, the OCCA rejected each of these

claims on direct appeal. Dkt. # 12, Ex. 3 at 10-14.  Respondent contends that the claims raise no

federal constitutional issue and are not cognizable in this habeas corpus proceeding. The Court

agrees.

As stated above, a federal habeas court has no authority to review a state court's

interpretation or application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)

(emphasizing that it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions). Instead, when conducting habeas review, a federal court is

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

States.  Id. at 68; 28 U.S.C. § 2241.

In each of grounds three, four, and five, Petitioner challenges the state court's evidentiary

rulings.  Because the claims allege errors of state law, they are not cognizable in this federal habeas

corpus proceeding. McGuire, 502 U.S. at 67-68. However, to the extent the claims may implicate

Petitioner's constitutional rights, the Court finds that he has failed to demonstrate that his trial was

rendered fundamentally unfair by the admission of the challenged testimony. See Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (holding that habeas corpus relief cannot be provided on the basis of state court evidentiary rulings "unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." (quoting Mayes v. Gibson, 210 F.3d 1284, 1293 (10th Cir. 2000))). The category of infractions which violate fundamental fairness is very narrow, and Petitioner's claims fall outside that category. See Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002). Petitioner may obtain habeas relief for an improper state evidentiary ruling only "if the alleged error was so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process." Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002) (alteration in original; quotation marks and citation omitted).

Because Petitioner's grounds three, four, and five are not cognizable in this federal habeas corpus proceeding and do not show that his trial was rendered fundamentally unfair, habeas corpus relief shall be denied on these claims.

**4.     Error in denying requested continuance (ground 6)**

In ground six, Petitioner complains that the trial court erred in denying his request for a continuance. A few days before commencement of his trial on this murder charge, Petitioner was tried and convicted of Robbery With a Dangerous Weapon and Sexual Battery, in Tulsa County District Court, Case No. CF-2006-771. In that earlier tried case, Petitioner was represented by Richard Couch of the Tulsa County Public Defender's Office. On October 5, 2006, the day after conclusion of the trial in Case No. CF-2006-771, Petitioner's counsel handling the murder charge, Sharon Holmes, filed a motion for a continuance, citing the need for additional time to interview

witnesses. The trial judge denied the motion. On direct appeal, the OCCA denied relief on this

claim, finding as follows:

> In Proposition 6, Appellant claims the trial court erred in refusing to grant
> him a trial continuance. Defense counsel requested a continuance just days before
> trial was scheduled to begin. Counsel explained that they had only recently been
> retained to represent Appellant and needed more time to prepare. The trial court's
> decision to grant or deny a continuance is a matter of discretion. *Hill v. State*, 1983
> OK CR, ¶ 14, 672 P.2d 308, 311. Appellant challenges the reasons given by the trial
> court for denying a continuance, but that is not the ultimate issue. Appellant does not
> specify how the trial court's ruling impaired his ability to defend himself. We find
> no abuse of discretion on this record. *Cole v. State*, 2007 OK CR, ¶¶ 5-8, 164 P.3d
> 1089, 1093. Proposition 6 is denied.

Dkt. # 12, Ex. 3 at 14-15. "[B]road discretion must be granted trial courts on matters of

continuances." Morris v. Slappy, 461 U.S. 1, 11 (1983). Further, the Tenth Circuit has noted that,

"[a] trial judge's decision to deny a motion for continuance constitutes an abuse of discretion only

if the denial was 'arbitrary or unreasonable and materially prejudiced the [defendant].'" See Phillips

v. Ferguson, 182 F.3d 769, 775 (10th Cir. 1999) (quoting United States v. Rivera, 900 F.2d 1462,

1475 (10th Cir. 1990)). Petitioner does not allege, and nothing in the record suggests, that he was

materially prejudiced by the denial of a continuance. Petitioner has failed to demonstrate how the

OCCA's decision was an unreasonable application of Supreme Court law. See 28 U. S. C. § 2254(d).

He is not entitled to relief on his ground six proposition of error.

### 5.      Cumulative error (ground 7)

As his seventh proposition of error, Petitioner claims that the errors during his trial combined

to render his trial unfair, and that as a result, his conviction should be reversed.  See Dkt. # 1 at 58.

Petitioner raised a claim of cumulative error on direct appeal.  The OCCA ruled as follows:

> Finally, in Proposition 7, Appellant asserts that the cumulative effect of any errors
> described above denied him a fair trial. Because we have not identified any error, we

14

cannot find any error by accumulation.  *Eizember v. State*, 2007 OK CR 29,¶ 158, 164 P.3d 208, 245. This proposition is denied.

(Dkt. # 12, Ex. 3 at 15).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471). In this case, the Court did not find two or more actual errors. As a result, the Court finds no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim is contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).  He is not entitled to habeas corpus relief on this ground.

## C.  Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a

court could resolve the issues differently, or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

The Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable amongst jurists of reason.  <u>See</u> <u>Dockins</u>, 374 F.3d at 938. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

### *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the petition for writ of habeas corpus (Dkt. # 1) is **denied**.  A separate judgment shall be entered in this matter. A certificate of appealability is **denied**.

**DATED** this 18th day of December, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

16